```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MANSSOR ARBABSIAR,             :
                               :
              Petitioner,      :
                               :   Nos. 14 Civ. 3222 (JFK)
       -against-               :        11 Cr. 897 (JFK)
                               :
UNITED STATES OF AMERICA,      :   OPINION & ORDER
                               :
              Respondent.      :
------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Petitioner Manssour Arbabsiar's ("Arbabsiar" or "Petitioner") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and to assign new counsel.  For the reasons that follow, Petitioner's motion is denied.

## I.  Background

On October 18, 2012, Petitioner pled guilty to conspiring with officials in the Iranian military to assassinate the Saudi Arabian Ambassador to the United States.  The Plea Agreement charged Arbabsiar with conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958, and with conspiracy to commit an offense against the United States under 18 U.S.C. § 2332b, in violation of 18 U.S.C. § 371.  Upon review of the Plea Agreement, Arbabsiar was found to have a total offense level of 43 and a criminal history category of VI, for a sentence under

the U.S. Sentencing Guidelines ("Guidelines") of 300 months. Accordingly, consistent with both the Guidelines and the Plea Agreement, Arbabsiar was sentenced on May 30, 2013 to a prison term of 300 months. (Sentence Tr. at 15:16-18.)

Petitioner timely filed the instant Section 2255 motion on April 28, 2014, requesting that he be resentenced and asserting three bases upon which to grant relief:  (1) that the Court failed to appropriately consider evidence of mental illness and incompetency; (2) that the Court failed to properly calculate and consider the applicable Guidelines; and (3) that Petitioner did not receive effective assistance of counsel at sentencing. For the reasons discussed below, Petitioner's motion is denied.

## II.  Discussion

### A.  Legal Standard

Section 2255 allows a prisoner held in federal custody to collaterally challenge his federal conviction or sentence. See 28 U.S.C. § 2255(a).  To obtain relief under this provision, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Section 2255 is not, however, a

substitute for direct appeal. See Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005). Consequently, claims that could have been raised on direct appeal, but were not, are generally unreviewable under Section 2255. See Bousley v. United States, 523 U.S. 614, 622 (1998); Weber v. United States, No. 06 Civ. 7170, 2007 WL 1834827, at *2 (S.D.N.Y. June 25, 2007).

Because Petitioner is proceeding pro se, his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and will be read "to raise the strongest arguments that they suggest," Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (quotation marks omitted).

### B.   Procedural Defects

#### 1.   Failure to File A Direct Appeal

Arbabsiar has chosen to bring this Section 2255 motion without first making a direct appeal. While such a failure generally precludes further review, claims of ineffective assistance of counsel are exempted from the procedural default rule. See Massaro v. United States, 538 U.S. 500, 505 (2003). Moreover, Arbabsiar can escape the procedural default of his other claims if he can demonstrate (1) cause for failing to raise the issue on direct appeal and prejudice resulting

therefrom or (2) actual innocence. See Sapia, 433 F.3d at 217-18; Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998). Cause may be established by showing that "the factual or legal basis for a claim was not reasonably available to counsel" or that the procedural default was due to ineffective assistance of counsel. See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). Accordingly, affording Petitioner every favorable inference, Arbabsiar appears to assert ineffective assistance of counsel both as a stand-alone claim and as a cause for failing to directly appeal his other claims. (Pet'r Reply at 1-2.) Therefore, the Court must consider the adequacy of defense counsel's performance in determining whether Arbabsiar's petition is procedurally barred.

Where a defendant asserts ineffective assistance of counsel to escape procedural default, courts have found that the alleged deficiency must constitute ineffective assistance under the standard two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See Sapia, 433 F.3d at 218 (quoting Johnson v. United States, 313 F.3d 815, 818 (2d Cir. 2002)) (internal quotation marks omitted); Gutierrez v. United States, No. 04 Civ. 6529, 2005 WL 2207026, at *3 (Sept. 6, 2005). Therefore, the appropriate test for determining if Arbabsiar has stated a claim for ineffective assistance, such

that he may also avoid procedural default on his other claims, is whether the performance of Arbabsiar's trial counsel "fell below an objective standard of reasonableness and whether the defendant was prejudiced by counsel's deficient acts or omissions." Sapia, 433 F.3d at 218.  Petitioner clearly fails to meet this burden.

As discussed below, Arbabsiar has offered no evidence that defense counsel acted unreasonably or that he was prejudiced by counsel's conduct and there is nothing in the record to support such a finding.  See Strickler v. Greene, 527 U.S. 263, 289 (1999) (noting that a defendant asserting ineffective assistance of counsel must demonstrate prejudice so substantial that, but for counsel's deficient conduct, there is a reasonable probability that the result of the proceeding would have been different).  Alternatively, Arbabsiar cannot claim that he is actually innocent because he conceded his guilt upon entering his plea and has made no subsequent claim of innocence.  See Weber, 2007 WL 1834827, at *2 (citing United States v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999)) (noting that post-judgment claims for sentencing relief are inconsistent with claims of innocence); Aponte-Vega v. United States, No. 01 Civ. 1160, 2003 WL 22097506, at *2 (S.D.N.Y. Sept. 9, 2003). Arbabsiar has therefore failed to demonstrate ineffective

assistance of counsel and, accordingly, his remaining claims are procedurally barred for failing to file a direct appeal.

## 2. The Plea Agreement

Arbabsiar's petition is also procedurally barred in its entirety for the independent reason that it violates the terms of the Plea Agreement. Under the Agreement, Arbabsiar expressly waived his right to either appeal or collaterally attack "any sentence at or below the Stipulated Guidelines Sentence of 300 months' imprisonment." (Plea Agreement at 5-6.) Because he received a sentence of 300 months, his right to bring a Section 2255 petition has therefore been waived unless the waiver can be shown to have been invalid.

It is well-established that a defendant's knowing and voluntary waiver of the right to appeal a sentence falling within an agreed upon Guidelines range is presumptively valid and enforceable. See, e.g., United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011). This presumption can be overcome, however, where a criminal defendant's guilty plea is not made "competently and intelligently."[1] See Godinez v. Moran, 509 U.S.

---

[1] A waiver provision of a plea agreement can also be rendered unenforceable if it was entered into without the effective assistance of counsel. See United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001). For the reasons discussed below, however, Petitioner's assertion of ineffective assistance is without merit and so cannot undermine the effect of his plea. See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004).

389, 396 (1993); Lear v. Poole, 711 F. Supp. 2d 288, 294 (W.D.N.Y. 2010).  The federal standard for determining competency at trail is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Godinez, 509 U.S. at 396.  The ordering of an incompetency hearing, however, is not a perfunctory act; rather, such an order requires the court to determine that there is "reasonable cause to believe" that the defendant may be incompetent. See United States v. Hall, 523 F.2d 665, 667 (2d Cir. 1975).  In considering whether reasonable cause exists, the burden of proving incompetence rests with the defendant. Medina v. California, 505 U.S. 437, 450 (1992) (noting that the Supreme Court has required only that the defendant be given a "reasonable opportunity" to demonstrate his incompetence).

Arbabsiar argues that his plea and waiver are invalid because the Court failed to conduct a pre-plea hearing into his competency, even though the Court was "on notice of a mental defect" affecting Arbabsiar's ability to understand the proceedings against him. (Pet'r Reply at 2-3.)  In considering evidence of incompetency, however, a defendant's own statements at a plea hearing constitute a "formidable barrier" that cannot

7

be overcome by conclusory allegations or contentions that "in the face of the record are wholly incredible." Lear, 711 F. Supp. 2d at 294-95; accord Abramo v. United States, No. 12 Civ. 1803, 2014 WL 1171735, at *9 (S.D.N.Y. Mar. 19, 2014) (noting that a district court may rely upon the defendant's own sworn statements).  As the record makes clear, Arbabsiar affirmatively stated that he had discussed the charges and plea with his attorney, that he understood the Plea Agreement and the consequences of his plea, and that he understood he was waiving all rights to withdraw, appeal, or otherwise attack his plea and conviction. (Plea Tr. at 6-17).  Moreover, because "counsel is well-positioned to know whether the defendant is able to participate in his own defense," a district court may properly consider statements by defense counsel as further evidence of a defendant's competence. See United States v. Del Carpio, 63 Fed. Appx. 539, 541 (2d Cir. 2003).  To that end, the Court specifically inquired whether there was any question as to Arbabsiar's competency prior to accepting his guilty plea.  In response, defense counsel unambiguously affirmed that Arbabsiar was competent, that he understood the proceedings against him, and that it was appropriate for him to plead guilty. (Plea Tr. at 5.)

Arbabsiar also asserts that the evidence from the post-plea psychiatric evaluation cast sufficient doubt on his competency during the proceedings so as to require that the Court order a new competency hearing. This contention is simply not supported by the record. If anything, the post-plea psychiatric evidence presented to the Court supports the exact opposite conclusion: as the Court noted at sentencing, Dr. Michael First—who served as an expert witness for the defense—concluded in his April 16, 2013 report that Arbabsiar knew right from wrong and was mentally competent to stand trial. (Sentence Tr. at 14.)

Therefore, to the extent that Arbabsiar now asserts that the Court was "on notice of a mental defect" affecting Arbabsiar's ability to understand the proceedings against him (Pet'r Reply at 2-3.), his claim is directly contradicted by the record at the plea hearing and at sentencing. As a result, there is no reasonable basis for this Court to order a new competency hearing; rather, the Court finds that the plea and waiver were made competently and intelligently, such that the instant petition is procedurally barred.

### C. Petitioner's Motion Is Substantively Meritless

Arbabsiar argues that resentencing is required in this case because (1) the Court failed to adequately consider whether his mental health at the time of the offense warranted a downward

9

departure from the Guidelines, (2) the Court failed to apply the proper base and final offense levels in calculating the appropriate Guidelines range, and (3) Arbabsiar received ineffective assistance of counsel in the negotiation of the plea and at sentencing. Because the procedural default doctrine is "prudential rather than jurisdictional," this Court can and will address the merits of Petitioner's claims, including whether the performance of Arbabsiar counsel during the plea negotiation and at sentencing was in fact objectively unreasonable. See Gutierrez, 2005 WL 2207026, at *3. For the reasons discussed below, Petitioner's arguments are without merit.

### 1. Mental Competency

Arbabsiar asserts that the Court failed to adequately consider evidence that his offense was driven by his mental state, but instead "basically refute[d] the facts as testified to by the doctor without any information of conclusive rebuttal testimony." (Pet'r Mem. at 2.) Petitioner also asserts that the Court abused its discretion when it found the Government's medical witness "more convincing" than the witness for the defense. (Pet'r Reply at 4.) These claims are entirely without merit.

As the record makes clear, the Court heard and considered extensive evidence relating to Arbabsiar's mental condition.

Prior to sentencing, the Court held a two-day Fatico hearing on the specific issue of Arbabsiar's mental health at the time of the offense, during which it considered expert testimony from Dr. First, a Professor of Clinical psychiatry who testified for the defense, and from two Government witnesses, Dr. Gregory Saathoff, a psychiatrist, and Dr. Elissa Miller, the Chief Psychologist at the Metropolitan Correctional Center. (Sentence Tr. at 13.)  The three witnesses that testified as to Arbabsiar's mental condition were "all qualified in their areas of expertise." (Sentence Tr. at 14.)  However, the Court is not bound to uncritically accept the conclusions of expert witnesses, including physicians or psychiatrists, if for no other reason than "a determination of legal competence is not equivalent to a medical diagnosis." Id. at 200.  For this reason, a court's decision to credit the conclusions of one expert over another does not suggest a lack of confidence in their professional expertise or veracity; rather, presented with differing opinions, it is the court's responsibility to render judgment. Id. at 200-01.

  Here, the Court specifically referenced the evidence and testimony of the three experts prior to sentencing.  In light of Dr. First's concession that Arbabsiar's alleged hypomanic episodes did not persist continuously throughout the conspiracy,

11

the fact that Dr. First's diagnosis changed over time from bipolar I to bipolar II, and the greater time that Arbabsiar spent with Dr. Saathoff than with Dr. First, the Court concluded that Dr. Saathoff was more convincing than Dr. First and ruled that Arbabsiar was not suffering from a bipolar disorder at the time of the offense. (Sentence Tr. at 14.)  The Court also noted that Dr. First concurred in the view that Arbabsiar knew right from wrong and was competent to stand trial. (Id.)  As the record makes clear, therefore, the Court carefully considered expert testimony and other evidence before determining that Arbabsiar's offense was not driven by an altered mental state.

### 2. Sentencing Guidelines

Arbabsiar also asserts that the Guidelines, as detailed in the Plea Agreement and referenced during the plea, were improperly calculated.  Specifically, Arbabsiar makes four claims:  (1) that as part of the Plea Agreement he did not admit to participating in a conspiracy or solicitation to commit murder, as charged in Count 2, and so his base offense level was incorrectly calculated at 33; (2) that his offense level under Count 2 was improperly increased four levels to 37 because he never admitted to receiving something of pecuniary value for undertaking the murder; (3) that his offense level was improperly increased a further twelve levels because he did not

admit to terroristic acts; (4) that he did not admit to committing an offense against the United States as charged in Count Three; and (5) that the Court wrongly denied Arbabsiar a three-level decrease for his "acceptance of responsibility." Again, these assertions are flatly contradicted by the record.

As an initial matter, the Court notes that Arbabsiar's final offense level was determined not by Count 2, but by Count 3, which contained an applicable base level of 43. (Plea Agreement at 4.) Consequently, his first two claims—even if true—are without effect.[2] While Arbabsiar also asserts that he did not admit to conspiring to kill or maim any person within the United States or to create a substantial risk of serious

---

[2] Arbabsiar's base offense level under the Plea Agreement was determined to be the highest level applicable to Counts One, Two, and Three, which were grouped together because they involved the same victim and were connected by a common criminal objective. See U.S.S.G. §§ 3D1.2(b), 3D1.3(a). In any event, however, the Court notes that the offense level relating to conspiracy to commit murder for hire, as stated in Count 2, and the enhancement based on the offer or receipt of something of pecuniary value for undertaking that murder, were both properly calculated. First, as part of the Plea Agreement and plea hearing, Arbabsiar specifically admitted that he and his co-conspirators agreed to cause the assassination of the Saudi Arabian Ambassador to the United States. (Plea Agreement at 7; Plea Tr. at 18.) Second, Arbabsiar's base offense level under Count 2 was properly increased to 37 because the enhancement is not dependent on the defendant himself having received a pecuniary benefit; rather, section 2A1.5 of the Guidelines requires a four-point enhancement if, as part of a conspiracy or solicitation to commit murder, the "offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder." U.S.S.G. § 2A1.5(b)(1). This standard was clearly satisfied by Arbabsiar's admission that he agreed to pay another individual $1.5 million to kill the Ambassador. (Plea Agreement at 7; Plea Tr. at 19.)

bodily injury to others by destroying property within the United States, as charged by Count Three, this assertion is clearly contradicted by his admission that he conspired with others to assassinate the Saudi Ambassador while the Ambassador was at a restaurant in Washington, D.C., in violation of Section 371 and 2332b of the U.S. Code. (Plea Agreement at 7; Plea Tr. at 18.) Arbabsiar's base offense level was therefore correctly determined to be 43.

Arbabsiar's third claim relating to the twelve-point terrorism enhancement similarly fails.  The Guidelines provide for a twelve-point sentencing enhancement for any felony that involved or was intended to promote a federal crime of terrorism, which includes offenses calculated either to influence the conduct of government by intimidation or to retaliate against government conduct. See U.S.S.G. § 3A1.4 application note 1; 18 U.S.C. § 2332b(g)(5).  Arbabsiar's offense levels under all three counts was therefore properly increased by twelve levels, because he specifically admitted to conspiring with officials in the Iranian military to cause the assassination of the Saudi Ambassador to the United States (Plea Agreement at 7; Plea Tr. at 20.)

Likewise, Arbabsiar's final claim that he did not receive a three-level reduction based on his acceptance of responsibility

is also contradicted by the record.  As an initial matter, his argument is without effect because, with or without the reduction, Arbabsiar's final offense level would be above 43 and, as the Court recognized at sentencing, "an offense level of more than 43 is to be treated as an offense of 43" under the Guidelines. (Sentence Tr. at 11.)  Nonetheless, Arbabsiar did receive a reduction to his offense level based on his acceptance of responsibility.  Both the Plea Agreement and the Court's statements during the plea hearing reference a final Guidelines offense level for Count 3 of 52, reflecting a base level of 43, plus a twelve-point enhancement as an offense involving a crime of terrorism, and a three-point reduction based on his acceptance of responsibility. (Plea Agreement at 4; Plea Tr. at 14.)  Therefore, the sentencing Guidelines as stated by the Court during the plea were properly calculated and were consistent with the facts and terms of the Plea Agreement.

### 3. Ineffective Assistance of Counsel

As a final matter, Arbabsiar's claims of ineffective assistance of counsel are also unpersuasive.  As noted above, a petitioner claiming ineffective assistance of counsel must demonstrate (1) that his representation fell below "an objective standard of reasonableness" based on prevailing professional norms, and (2) that counsel's deficient performance caused

petitioner to suffer significant prejudice. Strickland, 466 U.S. at 687, 694 (1984); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (discussing whether a guilty plea was involuntary and applying the Strickland test).

   The Court begins by noting that there is a strong presumption that defense counsel has rendered adequate assistance and exercised reasonable professional judgment. See Strickland, 466 U.S. at 689; United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990).  This presumption recognizes that "there are countless ways to provide effective assistance." See Strickland, 466 U.S. at 689.  For this reason, a defendant seeking relief based on ineffective assistance of counsel must identify the acts by counsel that were allegedly deficient and show that, but for those acts, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 690; McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).

   Here, Arbabsiar alleges that defense counsel performed unreasonably when she failed to ensure the "proper determination of the base offense and final offense calculation" and in "the negotiation of the plea and waiver." (Pet'r Reply at 2.) Regarding the latter complaint, it appears to be premised on the assertion that he was "marginalized" and "walked-thr[ough]" the

16

proceedings by defense counsel and that the outcome would have been different if his lack of capacity and mental condition at the time of the offense had been properly addressed. (Pet'r Reply at 4-5.)  As discussed above, however, Arbabsiar's Guideline offense levels were properly calculated, Arbabsiar himself admitted that he understood the Plea Agreement and the consequences of his plea, and the Court adequately considered evidence of Arbabsiar's mental state.  Therefore, there is nothing in the record to support the belief that defense counsel acted unreasonably or, even if she did, that Arbabsiar was prejudiced by counsel's actions.

### III. Conclusion

The Court has considered all of Petitioner's arguments and has determined that they are without merit.  There is no need for the requested evidentiary and re-sentencing hearings, because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b).  Accordingly, Petitioner's motion to vacate, set aside or correct his sentence pursuant to Section 2255 is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the

purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Furthermore, as the Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(2).

**SO ORDERED.**

Dated:    November 18, 2014
             New York, New York

                                                    John F. Keenan
                                        United States District Judge